THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. CLARENCE N. CALLARY, PLAINTIFF IN ERROR.

Submitted October 16, 1931—Decided March 3, 1932.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and. CASE.

For the defendant in error, *T. Millet Hand,* prosecutor.

For the plaintiff in error, *Tuso & Stanger.*

The opinion of the court was delivered by

CASE, J. The case comes up on strict writ and also under the one hundred and thirty-sixth section of the Criminal Procedure act. The plaintiff in error sets out eleven assignments of error and twenty-three specifications of causes for reversal and argues eighteen points in his brief. The conviction was on an indictment, founded on section 126 of the Crimes act ("An act for the punishment of crimes (Revision of 1898)," 2 *Comp. Stat., p.* 1743), charging that the defendant did "willfully or maliciously set fire to or burn

or aid, counsel, procure, or consent to the setting fire to or burning of a building, to wit, a dwelling house and store, or goods contained therein, which said building was at the same time insured by certain corporations against loss or damage by fire, the said Clarence N. Callary having then and there the intent to prejudice said fire insurance companies."

The first point argued is that the state failed to serve the defendant below with a copy of the indictment and a list of the jurors three entire days before the trial in accordance with section 54 of the Criminal Procedure act ("An act relating to courts having criminal jurisdiction and regulating proceedings in criminal cases (Revision of 1898)," 2 *Comp. Stat., p.* 1820). The point is based on the assumption that the crime alleged is that of arson. Notwithstanding the inclusion of the words "dwelling house" within the *videlicet,* the indictment did not charge arson. The essence of the charge was that the defendant fired an insured building with the intent of defrauding the insurer. The words "dwelling house and store" are incidental; they are a parenthetical identification of the building. The indictment is unmistakably for a violation of section 126, *supra,* and that section does not set out the crime of arson. It embraces quite different elements and a lesser penalty. The defendant was, therefore, not entitled to the service referred to. *State* v. *Heller,* 2 *N. J. Mis. R.* 1023. Moreover, we find nothing in the record, other than in the specifications of causes for reversal compiled after the trial was ended, to suggest that the copy of indictment and list of jurors were not served. There was no objection noted before or during the trial, no request for postponement, no exception taken and no error assigned. Even assuming that the defendant was entitled to the service and that there was none, no apparent harm came from the omission.

The second point is that the court erred in not granting an adjournment of the trial on an affidavit by the defendant and a certificate, unsworn, by a physician, showing the illness of an alleged material witness in the person of the defendant's father. For the purpose of the discussion we shall assume

that an application was actually made and refused, though we do not find a record thereof. The doctor's certificate stated that the witness was "suffering from chronic kidney disease and an abnormal mentality due to a stroke of paralysis." The proof submitted did not show when, if ever, the witness would sufficiently recover to attend court. Ordinarily a motion to postpone a trial is addressed to the discretion of the court. *State* v. *Grossman,* 94 *N. J. L.* 301. It was so in this case and the discretion was not abused.

The third point is directed towards the wording of the indictment, the essential portion of which is recited, *supra.* No objection was made to the indictment before the jury was sworn. After the state's opening, counsel for the defense asked the court to direct the prosecutor to select which of the disjunctive charges in the indictment the defendant was called upon to answer. In so doing counsel admitted that the motion was directed toward an error apparent on the face of the indictment. The court refused the request, and the exception goes to the refusal. It was said in *State* v. *Hill,* 73 *N. J. L.* 77: "The rule is entirely settled that if a statute makes it a crime to do this or that, mentioning several things disjunctively, the indictment may, as a general rule, embrace the whole in a single count; but it must use the conjunctive 'and' where 'or' occurs in the statute else it will be defective as being uncertain." The indictment offended that legal principle. But any objection to the indictment for defect of form or substance apparent on the face thereof should be taken before the jury is sworn (Criminal Procedure act, section 44, 2 *Comp. Stat., p.* 1834), unless the fault in the indictment is such that no crime is charged. *State* v. *Flynn,* 76 *N. J. L.* 473. In the indictment before us either of the disjunctive phrases, namely, the willfully or maliciously setting fire to the property and the aiding, counseling or procuring, or consenting to, or burning of the property, sets out a crime under the statute (*State* v. *Brand,* 76 *N. J. L.* 267), and upon timely objection one or the other might have been struck out and the indictment would still have contained an accusation made by the grand jury. *State* v. *Flynn, supra.* The motion came too late.

The fourth, fifth, sixth and eighth points relate to the admission or rejection of evidence. We have examined the matters referred to, find no harmful error therein and think it unnecessary to comment thereon.

The seventh point alleges error in permitting Frank Maggazu to testify that on the afternoon preceding the fire Joseph Callary, father of the defendant, had come to the witness' store and bought kerosene and the tenth point is that the court refused to strike that testimony. The testimony was admitted and permitted to remain awaiting opportunity for the state to connect the testimony with the defendant. The testimony was so connected by the witness A. Wardell Higbee, who stated that the defendant had admitted giving the latter's father the money wherewith to purchase the kerosene. It was also in the case that the defendant had left the premises with his father late in the afternoon, that a few hours afterward the fire was discovered and that the smoke from the fire was of an oily character.

The ninth point is that the trial court refused to direct a verdict at the close of the state's case, the sixteenth is that the court refused to direct a verdict at the conclusion of the whole case, and the eighteenth is that the verdict of guilty was against the weight of the evidence. We consider that the verdict was not against the weight of the evidence, and it follows that the refusals to direct were proper.

The eleventh point is that the trial court refused to permit the defendant while on the witness stand to use a certain statement purporting to contain a list of his personal property. The use of a memorandum rests very much in judicial discretion. *Meyers* v. *Weger,* 62 *N. J. L.* 432, 441. It was not shown that the witness needed the help of this memorandum to enable him to testify. In fact he proceeded, without assistance of any character, to detail the chattels in question. We think that no harm came to the defendant from the ruling. The court action was not an abuse of judicial discretion.

The twelfth and thirteenth points bring up, respectively, the thirteenth and fourteenth specifications of causes for reversal. The thirteenth specification is that the court erred

in using this language: "I think I know what counsel intended and that is, that where there are two inferences or deductions equally consistent with guilt or innocence, then the defendant may be concluded not guilty." This was an observation by the court with respect to a request submitted by the defendant in the following language: "When a case is predicated upon circumstantial evidence, the law presumes that where such circumstances may create two different inferences, the one being in favor of innocence, that is supposed to be found that conduces with innocence." The judge read that request and remarked thereon—"that is not entirely clear to the court"—and followed with the observation quoted above. The interpretation of the request thus expressed by the court was not charged to the jury as an instruction and was not, we think, under the circumstances, error. The fourteenth specification was the refusal of the court to charge the request in the words of the request. The request was not aptly phrased and the court was quite within bounds in declining to charge in that language. Furthermore, the court did charge that the defendant could not be convicted unless the jury was satisfied beyond a reasonable doubt of his guilt, and that "while circumstantial evidence may support a verdict it must be convincing in its character; it must always rise to that degree of convincing power which satisfies the mind beyond a reasonable doubt. This can never be the case when the evidence produced is entirely consistent with innocence in a given transaction;" and again: "of course if the weight of two or more deductions is equal, then you cannot say that any deduction is made. It is only when the weight of one deduction is beyond all others that you may act upon it." The given instruction covered the subject-matter with as much fullness as the request was entitled to elicit.

The fourteenth and fifteenth points relate to specifications for reversal that do not carry the definite statement of the matter complained of as required by our cases. *State* v. *Blaine,* 104 *N. J. L.* 325.

The seventeenth point is that the trial court refused to permit the jury to visit the premises. Counsel nevertheless

concedes that this action was within the discretion of the court, and in so doing answers his own point.

We find no reversible error in any of the eighteen points and therefore conclude that the judgment below should be affirmed.